75244. THE STATE v. BANKS et al.
(365 SE2d 855)

BIRDSONG, Chief Judge.

The State appeals from the grant of a motion to suppress evidence by defendants Clifford Banks and Lonnie Penn. Officer W. L. Britt, working out of the Narcotics Bureau of the Atlanta Police Headquarters, received information from a confidential reliable informant, who had previously provided him with accurate information in 20 to 25 cases, that an individual known as "alias J. C. Clifford," and his bodyguard, were transporting and delivering cocaine to several different locations in the Atlanta area. One location was "833-B Cascade Avenue." The informant had personally observed "alias J. C." and his bodyguard make distribution of cocaine. Officer Britt applied for and received a search warrant for "833-B Cascade Avenue," and for "alias J. C. Clifford," his bodyguard, and a pregnant woman, not otherwise identified. The search warrant was issued at "2:33 p.m., April 9, 1986" and Britt and his informant conducted a short stakeout on 833-B Cascade on April 9th, but the suspects did not appear. Between April 9 and April 17, the officers conducted occasional surveillance of that location but never saw either of the two

suspects. At 7:00 or 8:00 p.m. on April 18, the informant produced additional information; a surveillance team was sent to the 833-B Cascade location, and Officer Britt and his informant conducted a stakeout at "Cascade Place," which is approximately two and one-half blocks from 833-B Cascade. "Cascade Place" is a known drug location where persons conduct a "stop-and-copper" operation, i.e., individuals stand alongside the road and solicit persons in passing cars to stop and purchase drugs. Cascade Place is only one block long and has six houses in it. The informant had been in one of the houses but was not able to get the number. Because Officer Britt could not provide a magistrate with the exact number of the house, he did not attempt to obtain a search warrant for Cascade Place.

At approximately 11:30 p.m., defendants Banks and Penn arrived at Cascade Place in a Lincoln town car. The informant had told Britt that Banks always used leased cars and never returned in the same car. After Banks and Penn entered a house in Cascade Place, the informant departed after identifying the two suspects to Officer Britt. Britt called for the officers at 833-B Cascase to come to his location and also requested a marked police car and a uniformed officer to make the stop of the two suspects' car, which was departmental policy. Banks and Penn exited the house at Cascade Place and departed before the marked police car arrived. Britt followed behind the suspects' car and advised the other officers they were headed in their direction. Banks stopped at a shopping center on Cascade and went to a pay phone. Officer Britt drove up behind the suspects' car, and the other police car pulled around the Lincoln and stopped in front of it. One officer exited the police car and yelled: "Police." Banks attempted to run, but Britt ran behind his car in front of Banks, holding his police badge in one hand and a pistol in the other hand. He yelled: "Police, stop." Banks stopped and raised his hands, exposing a shoulder holster in which there was a .357 magnum. The officer who jumped from the police car went to the Lincoln in which Penn was sitting on the passenger side, and saw Penn make a movement towards his legs. The officer saw that Penn had a .357 magnum lying between his legs and yelled: "Police, freeze." Penn raised his hands and got out of the car.

When Officer Britt saw the pistol in Banks' shoulder holster, he asked him if he had a permit. Banks said, "No," and was placed under arrest. Britt said he knew that people involved in narcotics normally carried more than one weapon so he conducted a pat-down search of Banks and felt a plastic bag in his right jacket pocket. The plastic bag contained two plastic bags of a white powdery substance he suspected of being cocaine. Britt removed $445 in cash from Banks' pants pocket. Banks was advised of his *Miranda* rights. A search of the Lincoln revealed a "gram scale" on which was a white

powdery substance. On the rear seat was a bag containing approximately 50 small zip-locked plastic bags, normally used to package cocaine. Both men were arrested, the car impounded and subjected to an inventory search. Defendants moved to suppress the evidence seized and the trial court granted their motion. The State appeals. *Held*:

The State contends the police officer had probable cause to arrest the defendants. Defendants argue that the search warrant was invalid and had expired and could not authorize the action taken by the police on the morning of April 19. Under OCGA § 17-5-25, a search warrant is required to be executed within ten days "from the time of issuance." This warrant was issued at 2:33 p.m. on April 9, and would expire at 2:33 p.m. on April 19. The arrest was made shortly after midnight on April 18, the early morning hours of April 19. The warrant had not expired and, though the searches were not executed pursuant to it, it is of value to the "totality of the circumstances." A magistrate heard the evidence submitted by Officer Britt, that he had received from the informant, and found probable cause to approve issuance of a search warrant for defendants Britt and Penn and 833-B Cascade Avenue. Although the warrant was never executed, what transpired in this case was a warrantless arrest of both defendants based upon probable cause and a valid search.

An arrest is accomplished whenever the liberty of a person to come and go as he pleases is restrained. *Clements v. State*, 226 Ga. 66, 67 (172 SE2d 600); OCGA § 17-4-1. A warrantless arrest may be made by an officer if at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officer, and of which they had reasonably trustworthy information, were sufficient to warrant a prudent man in believing that the suspects had committed or were committing an offense. *Durden v. State*, 250 Ga. 325, 326 (297 SE2d 237); OCGA § 17-4-20; *Beck v. Ohio*, 379 U. S. 89, 91 (85 SC 223, 13 LE2d 142). The basis for issuance of a warrant by a magistrate is almost identical to the basis for a warrantless arrest, i.e., "facts sufficient to show probable cause that a crime is being committed or has been committed. . . ." OCGA § 17-5-21 (a). The U. S. Supreme Court (*Whiteley v. Warden*, 401 U. S. 560, 566 (91 SC 1031, 28 LE2d 306)) and this court (*Collins v. State*, 161 Ga. App. 546, 547 (287 SE2d 708)) have held that they are the same. The issue in the case at the bar being whether the facts that existed at the time of issuance of the warrant (in which the magistrate found probable cause existed) still pertained at the time of the arrest. Staleness of the facts relied upon is always a prime element in the determination of probable cause. A magistrate's finding of probable cause on the issuance of a search warrant is entitled to great deference. *Massachusetts v. Upton*, 466 U. S. 727, 732 (104 SC 2085, 80 LE2d 721). And, infor-

mation gained from a reliable informant can establish probable cause. *Rugendorf v. United States*, 376 U. S. 528 (84 SC 825, 11 LE2d 887). Further, corroboration of details given by an informant by subsequent investigation by police is of significant value. *Illinois v. Gates*, 462 U. S. 213 (3) (103 SC 2317, 76 LE2d 527). Here, the informant predicted Banks and his bodyguard would come to the Cascade area on the evening of April 18 and would go to a house in Cascade Place or 833-B Cascade. These predictions were confirmed by police surveillance. " 'Because an informant is right about some things, he is more probably right about other facts. . . .' " *State v. Stephens*, 252 Ga. 181, 183 (311 SE2d 823), quoting *Illinois v. Gates*, supra.

We do not find the information provided by the informant to Officer Britt on April 6 to be too stale on April 18 to act as an element of the "totality of the circumstances" in the determination of probable cause. Time is critical in a determination of staleness, but where the information provided is of an ongoing enterprise such as distribution of drugs, and such information has been updated by the informant on the evening of the arrest, as in the present case, and corroborated, at least in part, by police surveillance, the test to apply in a determination of probable cause is whether the totality of the information establishes the existence of reasonable probability that the conditions referred to in the warrant prevails at the time of the arrest. *State v. Luck*, 252 Ga. 347 (312 SE2d 791).

We find there was probable cause to arrest both defendants (*Sanders v. State*, 235 Ga. 425, 440 (219 SE2d 768)), and incident to such arrest police may make a full search of the individuals (*United States v. Robinson*, 414 U. S. 218, 225 (94 SC 467, 38 LE2d 427)), and of the car in their possession (*Adams v. Williams*, 407 U. S. 143, 149 (92 SC 1921, 32 LE2d 612)). Moreover, after the police lawfully discovered both appellant and his bodyguard armed, their continued search of the appellant and the car was most reasonable under the circumstances. *Adams*, supra at 149. The trial court erred in suppressing the fruits of the searches made of the defendants and their automobiles.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

D ECIDED J ANUARY 14, 1988 —
R EHEARINGS DENIED F EBRUARY 9, 1988 —

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Benjamin H. Oehlert III, Assistant District Attorneys*, for appellant.
*W. Michael Maloof, M. Randall Peek*, for appellees.