A98A0850. BURGESS v. THE STATE.
(502 SE2d 303)

JOHNSON, Judge.

A jury found Jeffrey Brinton Burgess guilty of possession of methamphetamine. Burgess appeals the denial of his motion to suppress evidence seized at his business pursuant to a search warrant. We find the trial court committed no error and affirm.

The evidence, viewed in a light most favorable to support the jury's verdict, shows that in March 1995 an investigator with the Douglas County Sheriff's Office received information from a number

---

of sources indicating that Burgess was involved in drug dealing. Specifically, a female informant stated that a man known as "Jeff," who runs a tattoo parlor, is involved in drug sales; that two teenage boys who lived at Jeff's house smelled of marijuana when they were around her; and that there was a lot of vehicle traffic at Jeff's house. The informant gave Jeff's address. A male informant indicated that Jeff Burgess runs a tattoo parlor called "Tattoos by Miami" on Highway 5 and was selling marijuana and methamphetamine. In July 1995, an employee at the Douglas County Courthouse told the investigator that a friend of hers said the owner of a tattoo business on Highway 5 was selling drugs.

On November 1, 1995, a police officer informed the investigator that officers had stopped two persons leaving the tattoo shop in a vehicle normally driven by Burgess; no drugs were found in the vehicle, but one of the individuals stopped had $2,000 in cash and a criminal record for narcotics. A GBI agent informed the investigator that he received a tattoo from Burgess and had discussed buying and selling methamphetamine with Burgess, but that he had not had time to pursue the investigation. The investigator observed the tattoo parlor for one hour and eleven minutes, during which time eight vehicles came and left with each person remaining approximately ten minutes.

On March 5, 1996, the investigator was contacted by an individual with the Cobb County narcotics unit, who indicated Burgess was a resident of Douglas County who owned a tattoo business named "Miami's." According to this individual, Burgess was selling large amounts of methamphetamine at his business and had relocated from Cobb to Douglas County after learning he was under investigation.

Three months later, the investigator received an anonymous call from an informant who stated that Jeff Burgess at Tattoos By Miami sells "crank" (methamphetamine) and supplies drugs in Douglas County and at the "Mardi Gras Club" in Atlanta. The caller stated Burgess keeps drugs in a safe located at his tattoo business, which had been moved from Highway 5 to another location. The caller stated Burgess is supplying a woman named "Jenna" with cocaine and methamphetamine and that Jenna drove a green Corvette, owned a beauty salon on Highway 5, and lived on South Baer Drive in Douglasville. The investigator identified "Jenna" as Jenna Dorn Harrison and observed Burgess enter Harrison's salon on several occasions, stay a few minutes and leave.

In June 1996, the investigator went to Harrison's residence to speak with her. After receiving her consent to search, the investigator recovered cocaine and marijuana from the residence and Harrison's purse. Harrison admitted she was addicted to drugs and was

buying from a local dealer, but would not give the dealer's name.

Also in June 1996, the investigator received information from another law enforcement agency that a person named Jeff Burgess with a tattoo business and living in Douglas County might be involved in drug sales. In addition, another investigator received an anonymous phone call that Burgess was currently in possession of one pound of methamphetamine at his tattoo shop. The caller stated a 17-year-old boy had purchased methamphetamine from Burgess several hours earlier. This other investigator went to the tattoo shop and observed numerous vehicles coming and going, each staying for a short period of time.

Based on this information, the initial investigator prepared a search warrant and affidavit which was issued on September 27, 1996. A number of officers proceeded to the tattoo parlor. Burgess was found at the tattoo parlor, and the investigator retrieved his wallet on a counter in plain view. The wallet contained Burgess' driver's license, other personal papers, and two plastic bags, one of which contained methamphetamine.

While at the tattoo parlor, officers encountered Melinda Peppers, an associate of Burgess. A compact in her purse contained cocaine. Peppers was given *Miranda* warnings, after which she stated the compact could contain cocaine or methamphetamine since she had used both. While searching the tattoo parlor, officers found hemostats used to smoke marijuana, marijuana seeds, a razor blade, and assorted pills. James Becker and Christy Williams arrived at the tattoo parlor during the search and were found to be in possession of marijuana. Williams is Burgess' girl friend.

Peppers testified as the sole defense witness. She stated that Burgess was commonly known by the nickname "Miami." She also admitted frequent past use of cocaine, methamphetamine, marijuana, and ecstasy.

1. In his first enumeration of error, Burgess contends the trial court erred in denying his motion to suppress evidence seized from his business. According to Burgess, the search warrant was improperly issued because the officer's affidavit was based solely on hearsay and unreliable information. This assertion is incorrect, but even if it were correct, the trial court properly denied Burgess' motion to suppress under the totality of the circumstances analysis.

"In determining whether probable cause supported issuance of a search warrant, a 'totality of the circumstances' test is employed. The task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the [judge] had a sub-

stantial basis for concluding that probable cause existed." (Citations and punctuation omitted.) *Gibson v. State,* 223 Ga. App. 103, 104 (3) (476 SE2d 863) (1996).

"Although the affidavit failed to supply information as to the past reliability and veracity of the informants, the corroboration of the information by multiple sources reduced the chances of a reckless or prevaricating tale." (Citations and punctuation omitted.) *Welch v. State,* 231 Ga. App. 74, 75 (1) (498 SE2d 555) (1998). "Even if an officer cannot provide information regarding the veracity of an informant or the basis of his knowledge, a tip may be proved reliable enough to provide probable cause if portions of the tip are sufficiently corroborated." (Citations and punctuation omitted.) *Stewart v. State,* 217 Ga. App. 45, 47 (456 SE2d 693) (1995).

A review of the affidavit at issue reveals that some of the sources had gained first-hand knowledge of Burgess' drug activities: they smelled marijuana on two people, observed traffic at Burgess' business, and found a large amount of cash on one individual with a drug record as he left Burgess' business. In addition, the investigator received information from a number of fellow officers, and as officers, their information is presumed to be reliable as a matter of law. See *McConville v. State,* 228 Ga. App. 463, 466-467 (2) (491 SE2d 900) (1997).

In this case, the investigator received information from nine sources over the course of eighteen months that Burgess was involved in illegal drug activity, culminating in information that he currently possessed drugs at the tattoo parlor the day the search warrant was issued. The investigator corroborated this information through independent investigation and surveillance. Sufficient information was presented to allow the trial judge to determine that Burgess "was engaged in a continuing scheme to sell illegal drugs over a period of several months." *Tabb v. State,* 250 Ga. 317, 323 (2) (b) (297 SE2d 227) (1982). The trial judge did not abuse his discretion in finding there was a fair probability that contraband would be found at Burgess' tattoo parlor and in issuing the search warrant. The trial court did not err in denying Burgess' motion to suppress.

2. In his second enumeration of error, Burgess contends the trial court erred in admitting into evidence the plastic bag containing methamphetamine found in his wallet. However, Burgess does not support this enumeration of error by citation of authority or argument. It is therefore deemed abandoned. Court of Appeals Rule 27 (c) (2). Moreover, based on our ruling in Division 1, this enumeration lacks merit.

*Judgment affirmed. Birdsong, P. J., and Smith, J., concur.*

DECIDED MAY 4, 1998.

*William V. Hall, Jr.*, for appellant.
*David McDade, District Attorney, William H. McClain, Assistant District Attorney*, for appellee.